We have an admission this morning. Andrew, will you come forward to the podium? It is my great pleasure to move the admission of Andrew Edward Odell Morell, who is a member of the bar of this of this court, a member of the bar in good standing with the highest courts of California and the District of Columbia. I have knowledge of his credentials and am satisfied that he possesses the credentials. Let me say that Andrew has been my law clerk and it is with extreme pleasure that I make this motion. May, having made the motion, let me ask Judge Chen what we do next. Oh, right. Right, I understand. You should recuse yourself from this. One moment, please. I would second the motion. I support this motion. Andrew has done an excellent job for the court. I concur. So, on the strength of your case, Judge Newman, your motion is granted. Thank you. Will you face the clerk to administer the oath? Do you solemnly swear that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations. Thank you. Welcome to the bar. Congratulations, Mr. Morell. Congratulations. All right. The first argued case this morning. It's number 18, 1617, right acquisition, LLC, against Web Power, Incorporated. Mr. Abramson. Thank you, and may it please the court. The 1617 appeal concerns alleged anticipation of claims 10 and 15 of the 141 patent by Carmel. I believe it relies a great deal on waiver, so I'd like to address that briefly, as to claim 10. The IPR petition presented seven grounds of which anticipation was only a part and sought no claim constructions in the petition. When a felon submitted the patent owner response, it addressed what was in the petition. As to the alleged requested elements which the petition claimed were being sent faster than the playback rate. Appellees replied below after the patent owner response introduced new arguments for anticipation. If I could just go straight to the chase on something. I agree it looked like below in front of the board. There was a lot of discussion about Carmel and its parallel links and so the claim was being immediately compared to whatever was going on in the Carmel disclosure without really defining what the right conception of the claim language was. And so what I'm trying to figure out is to what extent did you specify to the board that you were operating under an to be the very requested media data elements that are specified by some kind of identifier. I didn't quite see that kind of discussion come out in any of your papers. You argued that very vigorously. Did you talk about the relying on identifiers to specify the requested media data elements as being the data elements being transmitted? Absolutely. Could you show me that? It's in the oral argument. That's the issue. But it's in the appendix, right? Do you have a particular page in the oral argument that you would rely on for that? I thought maybe you'd be looking at page 650 or 651. You might have other pages, but... Yeah, so the elements responsive to the requests are the ones that are requested by serial identifier. You argued that very clearly. What lines are you looking at on that page? I'm sorry. Again, that was 651? Yeah. I mean, just because it seems to be a very important question of whether, given the waiver argument that's being made, for you to be able to respond and identify where you made the argument. That's page 650, line 19 and 20. And then 651 starting at line 7? 651 starting on line 7. The claim says responsive to mediated elements or sent to said user responsive to said request is talking about the elements that are sent responsive to the request by serial identifier. Is that the first time you brought that up? Did you bring it up in the patent owner response? The petition did not make the new arguments that teased that out. The petition just said that elements in gross were sent faster than the playback rate. It didn't frame this as an issue. And we did argue in the patent owner response that it is the elements that are requested by serial identifier that all of them have to be sent faster than the playback rate. That was in the petition. So our argument... I'm sorry. Excuse me. That was in the patent owner response. Where? You can wait until your reply time. Yeah, I'm going to like respond. Can I ask you another question relevant to this point, which is for the claim construction position, are you relying primarily, I only see you relying on the plain claim language for your claim construction position. Do I understand that correctly? That we rely on the claim language? Yes. We rely on the claim language, obviously in light of the specification, but we rely on the claim language for the construction that the antecedent for said... Excuse me. Let me get the exact language that we're referring to. The antecedent for that sending rate limitation, which is to send media data elements to the user system responsive to said requests, that the antecedent for that is the clause of Claim 10, in Claim 10, that says request specifying the identifiers of the requested data elements. So that when Claim 10 later on says, refers to said requests, it is requests for the elements by their serial identifiers. Those are the ones that have to be sent faster than the playback rate. And that's what they seek to blur on the other side. That's what the board sought to blur. The board did not focus as we say that they had to, according to the claim language, on the elements that are requested by their serial identifiers. The claim language could have been written a little more clearly. I mean, it is a little squishy and the board is operating under the broadest reasonable interpretation. And so when it says sending media data elements to the user responsive to said requests, it is a little on the vague side to understand what does that mean, responsive to said requests. It could be, as you say, that it's precisely the very media data elements that were requested and specified by identifier. But responsive to is also a little opaque and could be understood to be including other data elements that come along with it, precisely requested data elements. And so, I mean, if the claim had said, cause the server to send the requested media data elements to the user system, I mean, that would be very clear. But here we've got maybe a little bit of wiggle room and that's what I'm trying to understand. Okay. Well, I disagree. I would say it does say responsive to said requests, which is referring to those specific requests. But furthermore, I would argue that that, and we do argue that that's an unreasonable interpretation in light of the specification. Because the specification makes very clear that specification gives six embodiments that are push embodiments. And then there's one different embodiment. Right. We're talking about column eight. Right. One different embodiment here, which is a pull embodiment. And the specification is very clear. In this case, the server doesn't keep track of what's being sent to the client. The client is managing that process. So that's the way, that is a pull. So when you start to interpret claim 10 more broadly than that, then you're just inconsistent with the technology that's disclosed for that embodiment. It's a pull. Can I ask you something? Do I understand your position to be that one of ordinary skill in the art reading column eight and the pull description would not, I guess, wouldn't think that this claim would result in an operative device without it having, talking about pulling each data element as opposed to pulling multiple data elements at once, for example? Well, if the pull is going to work, if the client is now in charge of keeping its buffer at the proper level, then it's essential to that process that it knows that it's going to get the pieces it requests faster than the playback rate. So there's time between the pieces in order to adjust. Otherwise, there's no guarantee that it's going to be able to keep up. In order for this to work, the pieces at request have to get faster than the playback rate for the client to be able to be in control. That's the assumption here. And the spec is also clear about that, that they're sent faster than the playback rate. So you're really getting away from pull. You're really inconsistent with pull when you start to read the claim that broadly. And that's our position on that. And I think in light of the spec, it has to be understood that way, because otherwise you don't have a pull embodiment that works. But is it correct, then, that the additional limitations that you are telling us about are not present in any of the subordinate claims? I'm sorry, I did not understand that the limitations are not present in any of the subordinate claims. Certainly in Claim 15. Certainly in Claim 15 amplifies this. And if I'd like to turn to Claim 15 so I don't use up all my time here. Claim 15, we think, is a very clear error by the board. Claim 15 is the one that actually recites the negative limitation. The server does not maintain a pointer into a buffer established within said server for each said user. And this is, you know, an appellant's expert testified, it was unrebutted testimony, that because Carmel's server streams autonomously after a given starting point via seek, right? So, you know, Carmel, in Carmel, there is, Carmel does not request every element by a serial identifier. It requests, it identifies one from that identifier. In order to do that, the server has to be able to keep track of the last element that is sent in order to know the next element that is sent. It has a pointer for that. And that's what the expert testified. And it's unrebutted. Couldn't operate, he said it couldn't operate without maintaining a pointer to the last element sent. He stated that to maintain a pointer for each user to keep track. Sir, this is a substantial evidence standard or review that we have up here. I understand you have, you know, a piece of evidence that, or a declaration that you say suggests that Carmel has the server pointer. But at the same time, the board found otherwise, and then also found that Carmel talks about all these client side controls and record keeping. Right. And so in the combination of those two things, the absence of an express disclosure or implication, necessary implication that a server pointer exists in Carmel, plus all these client side controls in Carmel, the board found, and why wouldn't it be reasonable to find that there isn't a server pointer that's taking care of this? Judge Chen, the board was in error in that finding. Completely in error. The client side control that the board was referring to was the language in the specification about synchronization of playback. Yes, the client needs to synchronize on its side, after it receives the elements, it needs to synchronize playback. That has nothing to do with transmission from the server. It's misplaced reliance. It's completely off base. That does not support the conclusion that the board was just simply in error on that. This is not a pointer on the server side telling the server which element to send next. This is on the client side telling the client playback device which piece to play back through the speaker next. Now that's clearly erroneous. And I would submit that the board had no basis for its statements about client side control, that they're just misplaced. And I'd like to reserve the balance of my time. We will save your rebuttal time, and let's hear from Mr. Faulkner. May it please the court. The petitioners in the IPR have relied on the same evidence in Carmel as meeting the sending at a rate faster than playback limitation from the beginning of the petition. That evidence is on the appendix page 195. And there we cite first the general disclosure of sending at a rate faster than playback. And this I interrupt you for a minute to ask you about the claim construction issue. One thing that I thought was kind of odd is that the board in its decision on claim construction, instead of talking about the claim language and the words used in the patent specification, discussed the construction of the claim in the context of the prior art by using the terms links, talking about single links and multiple links. Do you know why it is that the board was talking about the prior art to construe this claim? I mean, normally you would look at the intrinsic evidence and you might not use words that are in the prior art. You'd interpret the claim, and then you'd, for anticipation, there's a factual question of whether the prior art teaches that claim limitation is properly interpreted. So do you know how the board did that? So I think it has to do with how the issue was presented to the board. Here, we argued that multiple links, the overall rate of items sent over multiple links, met the claim element. The patent owner argued that could not meet the claim element, and neither party had presented a claim construction. So I think the board's decision does talk about, it does provide a claim construction, right? I mean, it's in a section of the board's opinion titled claim construction. Correct. And I think the board is saying that there's nothing in particular, there's nothing in the plain language of the claim that limits it to the rate over a single link. But isn't it kind of odd to have the board talk about the prior art and use words in the prior art to interpret a claim? Certainly the prior art is not how the claim should be interpreted. It does not teach on that. That's correct. But I think what the board is saying is that there's nothing in this claim language, using the broadest reasonable interpretation standard, that would preclude the multiple link embodiment. And since that was the embodiment that they were trying to consider whether or not fell within the claim, I think that they used that as context for discussing. Would you say that's kind of harmless error by the board? Because I mean, the question really is, first to interpret the claim, and then you're to look at, does the prior art, it's a factual question, right? We would be looking at, is there something that teaches that claim limitation is properly interpreted? Well, I think ultimately the court construed the claim term correctly in that. By saying that it could be multiple links? Yes, that it could be, that rate is not limited to the rate over a single link. Essentially, the patent owner was asking the board to read in a limitation. Why is that not the resolution of a factual issue of whether the prior art teaches the claim limitation? So the board saw it as an implicit claim construction argument on the side of the patent owner. They state that the patent owner has implicitly argued that the claim is more limited than the claim language. Do you think that that's a proper way to resolve it? Because they're saying that the prior reference doesn't teach the claim element, that it should be resolved as a claim construction issue? I think that the board has to resolve the claim in that situation to know, is rates as limited as the patent owner's asking? And so that, I think, is what the board set out to do. The premise of the board's anticipation finding is that you look at all the data elements that are being sent over in Carmel and then figure out what the overall rate is, rather than just looking at the rate of the actual requested media data element or elements that's being transferred over. Is that right? I would say I would have a slight change to that. I think it was, they said you look to the rate of the overall data elements, that part I agree with, rather than look to only the data elements over a single link. The board didn't have to address this entire issue of whether, in addition to being elements sent over multiple links, whether the claim further require that each of those also be requested by serial identifier. That's the issue that had never been raised below, and so the board did not address that. Do you agree that that, though, was discussed during the argument before the board? So it was discussed only after the board raised the issue itself. So the entire argument before the board, in the reply brief, is this first argument of can it be multiple links instead of one link, and that argument really didn't depend on this serial identifier, nor did it depend on the interplay between the two sections. There was no discussion of the interplay in the last two sections of the claim, in the briefs, either. When you say in the briefs, I just want to make sure I'm following. Which briefs? You're saying the patent owner response? Sure, the patent owner response below, and the board has a scheduling order in this case that says any argument not raised in the patent owner response is waived, and here the word serial doesn't appear in the patent owner response. But the board never said anything was waived. Do I remember that correctly? Did the board say that they waived anything? No, they did not make a waiver finding. What they did was they said because it had not been briefed, the board was not going to address it. It did note that this interplay between these last two claim elements. It said this specific argument hadn't been raised, so it wasn't going to address it. Oh, that's the footnote. Yes, footnote three. Yeah, and so this is the argument that had never come up, this interplay between the two parts of the claim, and this whole idea of whether each item is requested by serial identifier. This came up the first time at oral argument, and it actually came up when the judge raised the issue and he asked the question. The reason he asked the question is because there was a third disclosure we relied on that's not at issue here, and that third disclosure involved resizing the media data elements to send them faster, and the judge thought that resizing of those, that might make them different media data elements. So he raises this question about the interplay of the last two. It was an argument that had never been raised, and building off that, there's a few scattered statements about serial identifiers made by the patent owner after the judge raised it. The judges ultimately, because it had not been briefed, declined to rule on that. Can I ask you a separate question, which is, do you agree though that at least what was argued in the patent owner response was that the data rate refers to the rate for each slice in Carmel? Correct. They did argue the data rates each slice, but now they're further arguing the data rate also has to be for each slice requested by serial identifier, which is a further limitation on what they said before, because the PTAB already found you can have all these links and send a bunch of data elements over, and that's sufficient to meet it. It doesn't matter that they're using multiple links. Now they're arguing, even if we accept what the PTAB decided there, that it can be the multiple links, it's still not met because we think the claim also requires that each one be requested by serial identifier. That's the new issue that we've been discussing here for the first time. But you can't really, but when an issue appears for the first time in the PTAB decision, they have to have an opportunity to argue it. Is that so, one way or another? Well they've had the opportunity to argue against these disclosures of Carmel from the beginning, and they've argued in the beginning that this disclosure is not met because it uses multiple links. They could have at that time argued that each one also must be requested by serial identifier. Do you agree though that they didn't seek a construction that it was limited to a single link? That was not a construction that they saw. They didn't seek it explicitly, they simply stated Carmel can't meet it because the claim requires using a single link. Well, or because Carmel sends, Carmel only reaches the data rate specified by the claim by sending over multiple links, right? Right, and that is not within the scope of the claim. I just wanted to make sure that we were in agreement that that was not a claim construction argument, that's an anticipation argument. Correct, yes, and the board found that implicitly though they were ascribing a certain meaning to the claim and making that argument. A further limitation. One of the questions we're going to consider though is whether the board erred in doing that, right? Correct, correct. So, in terms of the construction itself, if we look at the last two clauses of the claim, the second to last clause asks that we request one or more media data elements by serial identifier. That can be met by identifying one media data element by serial identifier. For example, you request send media data elements starting at element 42. You've met the first of those two clauses. The second clause says you now must send media data elements, it doesn't say said media data elements, you must send some media data elements that are responsive to that request that was just made. That can be met here, as in Carmel, where you would request, you've requested element 42 and following, and then you now send element 42, 43, 44, and 45. Those are responsive to the request. They were not each separately requested by serial identifier, but they do meet the language of the claim here. And because of that, so the language isn't so limited. Why wouldn't the better reading, so that the claim would have, I mean, why wouldn't the internal logic of the claim call for what's being, the media data elements being sent responsive to said request be the very requested media data elements in the, that's recited in the clause above? That'd be one way to interpret it. Certainly that would be more clear if it had the specification, that's the specific conception of the embodiment described in the specification of column A. So the specification describes requesting items. Right, but do you agree that that's the very conception that's described in column A? That you request media data elements according to their specified identifiers, and then you send those very requested media data elements. Yes, the preferred embodiment is a TCP embodiment, and so TCP does that. It requests each one by serial identifier. It requests, but then it also sends those same very requested media data elements. Correct, correct. So yes, if we're going to use the embodiment in the specification and hold the claim to that, then yes, you could so limit it. But sort of moving on from that, even if this is considered and the narrow construction is determined to be the right one, the limitation is still met by the two disclosures we've relied upon in Carmel. And the board sort of implicitly notes this when the board says it doesn't need to consider this issue in order to rely on what it has relied on. At some point, didn't the board observe that the transmission across any single link in Carmel is slower than the playback rate? When you're opening multiple links, the board did observe that's true. So that's in a discussion of the board's discussion of the multiple link embodiment. So why wouldn't that be contradicting what you just said? Well, because so the idea is the board has already decided that the rate could be the rate of achieved in the aggregate over multiple links. So then the question is, if it must also be each one requested by serial identifier, does Carmel in the multiple link embodiment disclose requesting by serial identifier? Are each one of those over the multiple links requested by serial identifier? And here they are. Carmel uses the same TCP mechanism which will request by serial identifier. So Carmel opens multiple links. It requests the media data elements using TCP by serial identifier. And those media data elements, let's say there's 10 links open and 10 elements come over, those media data elements are transmitted faster than they are played back. Did you make that argument below and before this court? So we have made that argument. So starting on page 25, this is where we explain that Carmel teaches sending at a rate more rapid under even the narrower construction that does require sending each one by serial identifier. I believe at first addressed that Carmel's general disclosure. So Carmel generally says send rate, send media data elements preferably at or faster than the playback rate. So that general disclosure applies to just the first element that's sent over. That one is sent faster and playback. But then we also, starting on page 28, discuss this multiple links. And so we say it also describes faster and playback as a lag recovery mechanism. And then on page 29 is where we set the substantial evidence that supports the fact that each of these requests is made by serial identifier. I'm sorry, where are you on page 29? Sure. So I guess in the middle of the full paragraph on there, it says Carmel discloses that when opening the multiple links, the client does request each of these slicers by identifier. Got it. I see where it's very clearly made, where it says even assuming WEG's construction is correct. Thank you. Yeah, and so there's first the evidence is the fact that the clients are the ones initiating these requests. Just like in the patent system, Carmel at column 10 very clearly describes a system where the client is monitoring the rate of data coming in and making adjustments. Then Carmel discloses that the way that those links are open is using HTTP. HTTP was known at the time to use TCP. A patent owner's expert conceded that in his deposition. So what we have is clients making requests using TCP. That's the exact same disclosure that's in the 141 patent. Clients making requests using TCP. We have substantial evidence. We have expert testimony that TCP does make requests by serial identifier. And that's on the PENIX page 330. Page 59 is the expert, our expert, explaining that the TCP protocol requires requests for data specify the sequence number of the desired data packet. So those are each requested by serial identifier, even if the narrow construction is adopted. There was some discussion in the Could you just point me somewhere that confirms that when you use TCP, you're transmitting the data at a rate that's faster than the playback rate? So the TCP doesn't necessarily mean you're sending it a faster playback rate. It just means that you're requesting it by serial identifier. The request faster playback rate is the Carmel disclosure. And there's two separate disclosures. First, Carmel says that you should use a transmission rate that's generally equal to or faster than playback. That's overall? Overall. The disclosure, yeah, is general. Then for the multiple links embodiment, that's used to recover from a lag scenario. So you've fallen behind real time in playback and you now have to recover and build up the buffer. So to recover, you have to So the entire reason for the multiple links embodiment is we're now going to open more links. It does seem as if the patent owner has stated that there are advantages over Carmel. Is the thrust of how this has come out has been that the way they're claiming it does not distinguish those differences or that there are no differences that could conceivably be distinguished? So I think it's both, as a matter of fact. I think the claim is not as narrow as patent owner has put forth. The plain reading of the language in the claim under the broadest reasonable interpretation doesn't require these extra features such as using a single link and requesting faster playback. That said, Carmel discloses the same underlying system that their because Carmel is, in column 10, Carmel describes a client-side request and it says explicitly the timestamps are used to have it monitor the pace of information coming in and, if necessary, open more links. So Carmel is a system that uses client-side requests just like the 141 patent. It explicitly says it's going to send media faster than playback and discloses ways to do that. And then it also uses the same transport mechanism, TCP, to do that. I understand the patent owner to be saying that data rate refers to the data rate for each slice, not the data rate over which multiple slices are sent. To the extent that that's the proper construction, do you still maintain that Carmel teaches that data rate? I mean, as I understand it, you need to rely on the sending of the data collectively, you know, five slices, for example. So not necessarily. That is an embodiment in Carmel and Carmel does disclose that's a way to recover from lag. But Carmel, in column two, says, and this is just describing the general system, that when the data stream comprises... Can you tell me? I want to follow along. So if you can just tell me what, you said column two, but what lines are you reading? Sure. So I'm starting at line 50, column two. And it describes, in some preferred embodiments of the present invention, the transmitted computer and the clients monitoring the upload and downloading of data to and from the server. So there's a server in between an uploading computer and a downloading computer. In order to determine the amount of time required to convey each slice and to verify that the slices are conveyed at a sufficient rate, when the data stream comprises multimedia data, the data rate should be generally equal to or faster than the rate at which data is transmitted to the sides of the system. In figure two, there's an uploading computer that's recording video and uploading it to the server. And then there's a client computer 30 that's downloading from the server. And throughout this patent, it describes those two processes. And at the end of the patent, it says you can use the teachings from one process to the other. But what it's saying is it's those two machines on the two sides that are monitoring the rate. But generally, the goal is to have a rate that is equal to or faster than the rate at which data are generated. So how do I know that that data rate is the rate for each individual slice? And how do I know that that's not referring to the bandwidth and having multiple slices of data sent at once? How do I know that? I mean, this is kind of a general description here. And so I'm wondering, is there something else that explains to me exactly what this means? So there's not other than we know that Carmel starts by opening a link, and only will open additional links should it fall behind in playback. So the disclosure suggests that we have one link. It should be generally equal to or faster. If it becomes slower, we will then open multiple links. That's a secondary mechanism if the primary mechanism is not doing the job by itself. But there's just this general statement and then later statements of how to recover from lag. Let's hear from the other side, and we will continue when we get to the next case as well. Thank you. Thank you. I'd like to address, first of all, the issue of multiple links. The petition did mention multiple links, but it did not make any arguments about aggregating the rate over multiple links. It was just not in the petition. It did not come up until the reply to the patent owner's response. That's really the genesis of how the arguments evolve and why we end up at oral argument having to address that aspect for the first time, which then raises the issues about individual pieces. It brings out all of that. And there was nothing in the petition about aggregating the rate over multiple links. There was also nothing in the petition trying to make an argument that the limitation about requesting slices by their ID was satisfied by TCP. There's nothing in the petition about that. It's completely off base. TCP is a low-level protocol that elements. It's totally off base. There's no foundation for it in the record. It's satisfying this limitation, not the basis of the Board's decision. It's really a red herring. I also note that my adversary didn't say anything to address Claim 15, where we say that our position is that the Board was just off base in finding that there were client-side control mechanisms that moderated the transmission. It might moderate opening individual links, but it's not telling the server which piece to send next. The client is not doing that. TCP, first of all, is not even properly in the record here as far as attaching this claim is concerned, but TCP doesn't do that They have really nothing on Claim 15. The Board was wrong on its characterization of client-side processes because those processes are internal to the client, not concerning communication with the server. I think that pretty much sums it up, unless the panel has any further questions for me. No, I think we're all right on this case. Thank you. So this case is taken under submission and we shall proceed when you're ready.